*673 OPINION.
Littleton :
Petitioners claim, first, that there was no gain to them upon the dissolution of the corporation and the transfer of its assets to, and the assumption of its liabilities by, a partnership composed *674 of the former corporate stockholders, and, secondly, that if the Board should determine that there was a gain, the fair market value of certain of the assets was less than the amount shown by the books and as used by the Commissioner.
As to the first issue, the Board adheres to its previous decisions that upon the dissolution and liquidation of a corporation and the transfer of the corporate assets to a partnership composed of the stockholders, such stockholders must be regarded as having received their share of the assets with whatever gain or loss their receipt entailed. Appeal of E. C. Huffman, 1 B. T. A. 52; Appeal of D. F. Buchmiller, 1 B. T. A. 380; Appeal of F. D. Keim, 4 B. T. A. 1240; Langstaff v. Lucas, 9 Fed. (2d) 691; aff'd. in 13 Fed. (2d) 1022.
The accounts of the corporation were carried to the partnership books without change and the Commissioner in determining the net income of the partnership for the remainder of the year, April 1 to December 31, 1920, used the same figures.
Several witnesses who were familiar with the business and conditions surrounding the same, testified in detail as to the fair market value of the physical properties in question and, from a consideration of all of the evidence, the Board is of the opinion that the fair market value of the physical properties mentioned on March 31, 1920, was $100,000, as claimed by the petitioners.
As regards the value of the grain and hay inventory, there is some testimony to the effect that the fair market value of this inventory on March 31, 1920, was 15 per cent less than the value as shown on the books, or $112,336.30. In the opinion of the Board, however, the Commissioner was not in error in holding that the fair market value of the inventory was $132,160.35. This value appears to be supported by the market prices of the commodities as they existed on March 31, 1920. The market prices for hay and grain were then on an advance and so continued for about three months thereafter. The book values of the inventory were considered the same as the then prevailing market prices and were so fixed by O. B. Hastings, one of the petitioners herein. The market prices for such commodities did not, according to his testimony, become any lower until some time in June, 1920. The claim for a reduction in the value of the inventory is predicated upon the fact that the germinating season includes March and April; that losses are likely to be sustained upon the corn shipments in this period and that the entire merchandise inventory should, therefore, be reduced 15 per cent. There is nothing to show that this fact was not considered in fixing the value of the merchandise inventory at the figure of $132,160.35. However, there is no evidence of the amount of the corn inventory upon which the reduction in value is claimed. Certainly, there was no justification *675 for reducing the inventory of hay below the then established market price. From a consideration of all of the evidence on this point, there appears no good reason for allowing the reduction claimed in this instance, and the Commissioner’s determination of a value of $132,160.35 for the hay and grain inventory is approved.
The accounts receivable, amounting to $171,084.16, were carried on the books at face value. The evidence submitted by petitioners warrants the conclusion that the fair market value of the accounts receivable on March 31, 1920, was $162,529.95.

Judgment will be entered on 15 days’ notice, under Rule 50.

Considered by Smiti-i and Love.